# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE ANDREWS,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CLIFFORD SLAWINSKI, ALFRED LIO,<br><br>　　　　　　Defendants. | Case No. CV 10-05850-MWF (VBKx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

This matter came on for trial before the Court sitting without a jury on March 18, 2015.  Following the presentation of evidence, the parties made their closing arguments. The matter was then taken under submission.

Having carefully reviewed the record and the arguments of the parties, as presented at the hearing and in their written submissions, the Court now makes the following findings of fact and reaches the following conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.  Any finding of fact that constitutes a conclusion of law is also hereby adopted as a conclusion of law, and any conclusion of law that constitutes a finding of fact is also hereby adopted as a finding of fact.

## I. FINDINGS OF FACT

1. On May 26, 2010, Plaintiff Andre Andrews was driving eastbound on Century Boulevard in the City of Inglewood, California.

2. Mr. Andrews was driving a gray Oldsmobile sedan with taillights that he had installed himself. (Exhibits 41, 42, 43). Mr. Andrews had purchased his taillights at a truck parts store. The employee at the truck parts store informed him that the lights he had purchased could turn from clear to red when the brake was applied. The taillights and the taillight covers both appeared clear when the brake light was not applied.

3. While Mr. Andrews was driving on Century Boulevard on May 26, 2010, Defendants Clifford Slawinski and Alfred Lio, both employed as Los Angeles County Deputy Sheriffs, were on regular patrol duty in the City of Inglewood, California, and traveling in a marked Los Angeles Sheriff's Department patrol car.

4. Deputy Slawinski was sitting in the driver's seat of the patrol car, and Deputy Lio was in the passenger seat.

5. At the time, both Deputies Slawinski and Lio were acting under color of state law and within the course and scope of their duties for the Los Angeles County Sheriff's Department.

6. Deputies Slawinski and Lio were parked at the intersection of Century Boulevard and Inglewood Avenue facing north when they saw Mr. Andrews pass through the intersection traveling eastbound on Century Boulevard. Century Boulevard north of Lennox Station, where the intersection was located, was known as a high crime area.

7. As Mr. Andrews passed by, Deputies Slawinski and Lio noticed his taillights looked "improvised" or homemade. Deputies Slawinski and Lio noted that Mr. Andrews' taillights did not look like standard issue or factory installed taillights, but rather appeared to be after-market taillights. The Deputies' observations of Mr. Andrews' taillights made them suspect multiple violations of the California Vehicle Code relating to taillights.

8. Deputies Slawinski and Lio testified that they noticed that Mr. Andrews was not wearing a seatbelt as he passed through the intersection. Mr. Andrews was wearing a seatbelt at that time.

9. Deputies Slawinski and Lio pulled behind Mr. Andrews' sedan and initiated a traffic stop by turning on their squad car's flashing lights. Mr. Andrews promptly pulled over on the side of the road.

10. Both Deputies Slawinski and Lio walked toward Mr. Andrews' car.

11. When they got closer to the sedan, Deputies Slawinski and Lio noticed that the reflectors on Mr. Andrews' taillights looked as if they had been pasted on with epoxy. Deputies Slawinski and Lio also noticed a yellow substance appearing to be epoxy below the light itself.

12. From this visual inspection of the lights as a whole, and taking into consideration their background, training, and experience as law enforcement officers with the Los Angeles County Sheriff's Department, Deputies Slawinski and Lio had a reasonable basis to believe that Mr. Andrews' car had after-market taillights that were not in compliance with the California Vehicle Code.

13. Deputy Slawinski then walked up to Mr. Andrews' driver's side window and asked him for his Driver's License, and inquired whether he owned the vehicle, and where he was going. Mr. Andrews complied with all requests, as was demonstrated by a video recording of the incident that Mr. Andrews made on his telephone. (Exhibit 44).

14. Mr. Andrews then asked Deputy Slawinski what was the problem. Deputy Slawinski replied that there was no problem. (Exhibit 44). The Court finds that Deputy Slawinski was not admitting that there was no basis for the stop, as Mr. Andrews contends, but rather determines that Deputy Slawinski chose to keep the interaction casual as he did not intend to issue a citation.

15. After reviewing and returning Mr. Andrews' Driver's License, Deputy Slawinski walked away. (Exhibit 44). The Court finds that Deputy Slawinski decided not to mention the issue with the taillights because Mr. Andrews had been polite and

compliant, and his license and registration were valid. Deputy Slawinski exercised his discretion not to issue a citation. Having listened to the testimony and seen the video recording, the Court finds that Mr. Andrews did conclude and could reasonably conclude that the taillights were not the primary reason for the traffic stop. For reasons explained below, however, that fact is irrelevant and this Court need not and does not determine whether Mr. Andrews was correct.

16. The entire interaction between Deputy Slawinski and Mr. Andrews lasted less than one minute. Mr. Andrews was not asked to step out of his vehicle, neither his car nor his person was searched, and he was not arrested or detained further.

17. After the incident, Mr. Andrews made his way to the Lennox station of the Los Angeles Sheriff's Office. At the station, Mr. Andrews explained the incident to Sergeant Phyllis Antuna, indicating that he had been stopped for no cause and requesting the names of the two officers involved, along with a complaint form.

18. Sergeant Antuna contacted Deputy Slawinski, and then informed Mr. Andrews that he had been stopped for his taillights.

19. Sergeant Antuna and Mr. Andrews then went outside and examined Mr. Andrews' car together. Sergeant Antuna looked at Mr. Andrews' taillights and explained that Mr. Andrews probably should add red taillight covers, because many police officers looking at his car would assume that his taillights are not in compliance with the California Vehicle Code as his taillights are clearly modified, and both the covers and the taillights themselves appear clear.

20. While still outside, Sergeant Antuna also explained to Mr. Andrews that the complaint form was available on the website, but that he could alternatively just write a letter labeled "Complaint" and it would be reviewed by the proper channels. Mr. Andrews responded, "Ok, I will do that." (Exhibit 46).

21. Mr. Andrews came back the next day and gave his complaint letter to Lieutenant Burson. While Mr. Andrews now asserts that his complaint letter was

destroyed or misfiled, there are no claims before the Court based on this fact, so the Court does not analyze these allegations below.

## II. **CONCLUSIONS OF LAW**

22.  Mr. Andrews brings one claim for violations of his constitutional rights under 42 U.S.C. § 1983, which provides that any person or persons who, under color of law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.  Mr. Andrews alleges that Defendant Deputies Slawinski and Lio violated his rights under the Fourth Amendment when they stopped his car on May 26, 2010.

23.  In order to prevail on his § 1983 claim against each of the Defendants, Mr. Andrews must prove by a preponderance of the evidence: (1) that the Defendants acted under color of law, and (2) that the acts of the Defendants deprived him of his Fourth Amendment rights under the United States Constitution.

24.  The Fourth Amendment prohibits "unreasonable searches and seizures by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *Terry v. Ohio*, 392 U.S. 1, 9 (1968)).

25.  In general, a seizure of a person for an investigatory stop is reasonable if, under all of the circumstances known to the officers at the time: (1) the officers had a reasonable suspicion that the person seized had committed a traffic or vehicle infraction, and (2) the length and scope of the seizure was reasonable. *See Arvizu*, 534 U.S. at 273. In order to prove the seizure in this case was unreasonable, Mr. Andrews must therefore prove by a preponderance of the evidence that Deputies Slawinski and Lio lacked reasonable suspicion to stop him and/or that the length and scope of the stop was excessive. *See, generally,* Ninth Circuit Manual of Model Civil Jury Instructions, Instruction No. 9.19 (Particular Rights – Fourth Amendment – Unreasonable Seizure of Person – Exception to Warrant Requirement – *Terry* Stop).

26. Reasonable suspicion is formed by "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *United States v. Choudry*, 461 F.3d 1097, 1100 (9th Cir. 2006) (internal quotation marks omitted) (applying the "reasonable suspicion standard" to a stop based on a parking violation). An officer is entitled to rely on his training and experience in drawing inferences from the facts he observes, but those inferences must also be grounded in objective facts and be capable of rational explanation. *Id.*

27. "A traffic violation alone is sufficient to establish reasonable suspicion." *Id.* (citing *Whren v. United States*, 517 U.S. 806, 810 (1996) (explaining that in general, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred")).

28. The rule articulated by the Supreme Court in *Whren* also provides law enforcement officers broad leeway to conduct searches and seizures regardless of whether their subjective intent corresponds to the legal justifications for their actions. In *Whren*, the Supreme Court held that the temporary detention of a motorist upon probable cause to believe that he has violated the traffic laws does not violate the Fourth Amendment's prohibition against unreasonable seizures, even if a reasonable officer would not have stopped the motorist absent some additional law enforcement objective. 517 U.S. at 812–13. In other words, a temporary detention can be constitutional even if the alleged traffic violation was a "pretext" for some other reason for the stop, as that word is commonly used. Therefore, there is little or no judicial review of the subjective intent of an officer in conducting a traffic stop, except in a case where the "true" motive was evidence that reasonable suspicion never existed and had been concocted.

29. Moreover, "[u]nder [the Fourth Amendment] standard, a search or seizure may be permissible even though the justification for the action includes a reasonable factual mistake. An officer might, for example, stop a motorist for traveling alone in a high-occupancy vehicle lane, only to discover upon approaching the car that two children

1 are slumped over asleep in the back seat.  The driver has not violated the law, but neither
2 has the officer violated the Fourth Amendment." *Heien v. North Carolina*, 135 S. Ct. 530,
3 534 (2014).  Applying this standard, the central question is not whether the officers were
4 correct, but rather whether they were *reasonable* in making their determination.  *See, e.g.*,
5 *Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990) ("[W]hat is generally demanded of the
6 many factual determinations that must regularly be made by agents of the government . . .
7 is not that they always be correct, but that they always be reasonable."); *United States v.
8 Garcia-Acuna*, 175 F.3d 1143, 1147 (9th Cir. 1999) (basing reasonable suspicion
9 determination in part on factually erroneous, but reasonable, belief that license plate
10 displayed by stopped vehicle did not belong to it); *United States v. Hatley*, 15 F.3d 856,
11 859 (9th Cir. 1994) (upholding warrantless search of vehicle that police reasonably
12 believed was mobile but was in fact immobile).

13       30.    Additionally, the Supreme Court recently clarified that a search or seizure
14 may be permissible even though the justification for the action includes a reasonable
15 mistake of law.  *Heien*, 135 S. Ct. at 534.  In *Heien*, an officer stopped a vehicle because
16 one of its two brake lights was out, but a court later determined that a single working
17 brake light was all the law required.  *Id.*  The question presented to the Supreme Court
18 was "whether such a mistake of law c[ould] nonetheless give rise to the reasonable
19 suspicion necessary to uphold the seizure under the Fourth Amendment." *Id.*  The
20 Supreme Court determined that it could, "[b]ecause the officer's mistake about the brake-
21 light law was reasonable," and therefore "the stop in [that] case was lawful under the
22 Fourth Amendment." *Id.*  This analysis depends on the question of "whether it was
23 reasonable for an officer to suspect that the defendant's conduct was illegal." *Id.* at 539.
24 "If so, there was no violation of the Fourth Amendment in the first place." *Id.*

25       31.    Decisions by the California Court of Appeal recognize the general authority
26 of police officers to "detain and cite a person for violating the [*California*] *Vehicle Code*."
27 *See, e.g., People v. Hart*, 74 Cal. App. 4th 479, 488, 86 Cal. Rptr. 2d 762 (1999) (citing
28 *People v. Grant*, 217 Cal. App. 3d 1451, 1458, 266 Cal. Rptr. 587 (1990)) (concluding

1 that an officer lawfully detained the driver of a vehicle who was parked illegally); *see also*
2 *Choudhry*, 461 F.3d at 1103 (citing *Hart*, 74 Cal. App. 4th at 488, and *People v. Brown*,
3 62 Cal. App. 4th 493, 72 Cal. Rptr. 2d 793 (1998)).

4     32.     Pursuant to California Vehicle Code section 26101(b), "[a] person shall not
5 use upon a vehicle, and a person shall not drive a vehicle upon a highway that has
6 installed a device that is intended to modify the original design or performance of a
7 lighting, safety glazing material, or other device, unless the modifying device complies
8 with Section 26104." California Vehicle Code section 26104 provides that "[e]very
9 manufacturer who sells, offers for sale, or manufactures for use upon a vehicle devices
10 subject to requirements established by the department shall, before the device is offered
11 for sale, have laboratory test data showing compliance with such requirements. Tests may
12 be conducted by the manufacturer." While the Court could not find any case law on the
13 subject, the Court reads the two regulations together to require that modified taillights,
14 brake lights and reflectors be lab-tested and approved, stamped as such, and no person
15 may use parts that have been modified from their lab-tested state.

16     33.     Additionally, California Vehicle Code section 24603 provides that every
17 motor vehicle (with some exceptions not relevant here) be equipped with two rear
18 "stoplamps," one mounted on the left and one on the right side that "emit a red light";
19 California Vehicle Code section 24607 requires that all motor vehicles be equipped "with
20 at least one reflector so maintained as to be plainly visible at night from all distances
21 within 350 to 100 feet from the vehicle when directly in front of the lawful upper
22 headlamp beams"; and California Vehicle Code section 24953 requires that, "[a]ny turn
23 signal system used to give a signal of intention to turn right or left shall project a . . .
24 flashing red or amber light visible to the rear."

### III.    APPLICATION OF THE LAW TO THE FACTS

27     34.     The Court concludes that the actions of Defendants Slawinski and Lio did not
28 deprive Mr. Andrews of his Fourth Amendment rights under the United States

-8-

Constitution because Defendants had a reasonable suspicion that Mr. Andrews had committed a vehicle infraction, and the length and scope of the seizure was reasonable.

35. The actions of Defendants Slawinski and Lio were objectively reasonable and based on Defendants' reasonable suspicion that Mr. Andrews had violated the law. Defendants observed taillights that looked modified and were completely clear:  the reflectors were pasted on to clear taillight covers and the taillights themselves looked off-market and also appeared to be completely clear in color.  Mr. Andrews was still driving when Defendants pulled behind him and activated their lights, so they could not know whether or not the brake lights would turn red when Mr. Andrews applied the brake. Rather, the only information known to Defendants when they decided to pull him over was that he was driving a vehicle with modified taillights that appeared to be completely clear.  Defendants' observations included specific, articulable facts that, together with objective and reasonable inferences, formed the basis for suspecting that, at the time Mr. Andrews was pulled over, he was violating California Vehicle Code section 24603 (red brake lights), section 24607 (two red reflectors), and section 24953 (red turn signals).

36. The fact that Defendants Slawinski and Lio may have had another subjective motive in initiating the stop of Mr. Andrews (and similarly, Mr. Andrews' suggestion that the California Vehicle Code violations may have been a pretext for stopping Mr. Andrews for these other reasons) is not a relevant inquiry for the Court under *Whren v. United States*, 517 U.S. at 812–13.

37. The fact that Mr. Andrews' taillights in fact turned red when he applied the brake does not negate the reasonable basis for the stop at the time the stop was initiated. As the Supreme Court explained in *Heien*, where "[a]n officer . . . stop[s] a motorist for traveling alone in a high-occupancy vehicle lane, only to discover upon approaching the car that two children are slumped over asleep in the back seat," the officer has not violated the Fourth Amendment even though the facts later revealed the driver had not violated the law.  135 S. Ct. at 534.  The central question is not whether the officers were correct, but rather whether they were ***reasonable*** in making their determination.  Having reviewed the

photographs in evidence and all of the evidence, the Court concludes that Defendants Slawinski and Lio were reasonable in making the determination that Mr. Andrews' homemade taillights violated the California Vehicle Code.

38. Additionally, Defendants Slawinski and Lio indicated that they believed off-market or modified taillights were not permissible on cars driven on public roads. While it appears that under California Vehicle Code section 26101(b), a person can use a vehicle with modified lights as long as those lights were lab-tested and approved and stamped as such, the Court concludes that this was a reasonable mistake of law. A reasonable officer in the field may not know, or may not remember at the time of the incident, that the law allows for certain modified lights that have been tested and stamped. A taillight that looks "homemade" or "improvised" would certainly catch the eye of an officer familiar with California Vehicle Code section 26101(b). Moreover, the Court notes that there was no evidence presented as to whether Mr. Andrews' taillights were in fact lab-tested and approved. The Court found only that Mr. Andrews purchased the taillights at a truck parts store, not that the store sold only parts that complied with the law.

39. Defendants' actions were therefore reasonable under the circumstances.

40. Moreover, the length and scope of the seizure was reasonable: the stop was less than two minutes long and Mr. Andrews was not searched or asked to exit his vehicle.

41. Accordingly, there was no violation of Mr. Andrews' rights under the Fourth Amendment to the United States Constitution.

42. Mr. Andrews (who is a young African-American man) believes that he was a victim of racial profiling, *i.e.*, that he was stopped because of his race, age and gender. *See, e.g.*, Charles R. Epp, *et al.*, *Pulled Over: How Police Stops Define Race and Citizenship* (2014) (examining statistics that suggest that young African-American men are subjected to far more investigatory stops than anyone else). The Court makes no findings or rulings on what—from the point of view of Mr. Andrews—is the central issue in this case. Even if his belief is correct, that claim as such is not now before this Court. Indeed, it is inherently an extremely difficult claim to bring successfully because of the

police discretion granted by *Whren* and *Heien*. It is not appropriate for this Court to question those cases or to determine if the crime prevention arising from investigatory stops is worth the risks to police legitimacy that might thereby be engendered.

## IV. VERDICT

The Court finds and rules as follows:

On Plaintiff's Claim 1 for unreasonable seizure in violation of the Fourth Amendment: In favor of Defendants Clifford Slawinski and Alfred Lio.

The Court will enter a separate judgment pursuant to Rules 54 and 58 of the Federal Rules of Civil Procedure.

Dated: May 27, 2015

_____
MICHAEL W. FITZGERALD
United States District Judge

-11-